FERDINAND J. VERBEECK, petitioner,

*v.*

JOANNA VERBEECK, defendant.

[Decided August 1st, 1921.]

1. The power to appoint a solicitor on behalf of a defendant wife in a divorce suit carries with it an implication of power to compel compensation of that solicitor by the husband.

2. Suit money, as such, dissociated from alimony, is allowed in proper cases.

3. The wife in a divorce case is entitled to an allowance to enable her to take depositions on commission in proper circumstances.

4. If a wife has sufficient separate property, the reason for giving her either temporary alimony or money to defray her expenses in a divorce suit does not exist, and she is not entitled to either.

5. When husbands leave their wives in European countries and come here, and, after the requisite lapse of time, sue for divorce alleging desertion in their old countries, this court will see to it that the wives are defended at the husbands' expense, and that their suits are stayed until they provide means ample for the purpose, at least, in all cases in which the wives desire to interpose defence.

6. When wives have stayed in Europe for years after their husbands have emigrated here, and have existed there by their own exertions, or otherwise, alimony *pendente lite* ought to be withheld from them on the ground of laches. if for no other reason.

On application by defendant for suit money, &c.

*Mr. Henry Marelli,* for the defendant.

*Mr. Jacob Van Der Clock,* for the petitioner.

WALKER, CHANCELLOR.

On October 19th, 1920, Ferdinand J. Verbeeck, a residenc of this state, filed a petition for divorce from his wife, Joanna H. Verbeeck, alleging that they were married on October 19th, 1908, in Belgium; that the defendant, on certain dates in 1915, committed adultery at Antwerpen, Hoboken, Belgium; that no children were born of the marriage; and praying for a divorce according to the statute. The defendant being notified of the pendency of his suit by publication and mailing, and not having answered within the time allowed by law, the cause was in due course referred to a special master by order filed January 17th, 1921, who, the special master, took depositions and reported that all the material facts charged in the petition were true and that a decree of divorce should be made for the cause of adultery. This report was filed February 1st, 1921. On February 15th, 1921, no decree *nisi* having been entered, an answer to the petition, written in French, was received through the mail from the defendant. Being translated it shows that the defendant avers that she had been for several years deserted by the petitioner; that she had a child by him born before their marriage, viz., April 13th, 1906, which had been acknowledged by him, as appears by the civil records of Hoboken and on the marriage certificate of the parties, an extract from which is attached to the answer. While the defendant does not in terms deny, she, nevertheless, inferentially denies the charge of adultery, saying that she is "an unhappy and deserted wife against whom no wrongdoing can be charged," and she prays that the petition be dis-

missed and that her husband be compelled to pay all costs and provide for the support of herself and of their child "legitimated by him." The loose manner of pleading in the answer is doubtless due to defendant's unfamiliarity with our requirements. She is entitled to defend, notwithstanding the belated answer. See *Grant* v. *Grant, 84 N. J. Eq. 81.*

Upon receipt of defendant's answer it was filed together with the translation, and an order was made which recited that the court deeming it proper to appoint a disinterested solicitor to actively defend the cause, it was ordered that Henry Marelli, esquire, one of the solicitors of this court, be assigned for that purpose; and it was further ordered that the defendant might apply for suit money and for alimony and counsel fee *pendente lite.* This order was filed March 8th, 1921. In pursuance of the leave thus given, counsel for defendant applied for allowances, and the matter has been heard in the presence of counsel for both parties.

In *Johns* v. *Johns, 87 Atl. Rep. 119,* I, when vice-chancellor, assigned counsel to defend an *ex parte* divorce suit, and, upon the conclusion of the hearing, I filed a memorandum directing the solicitor for the defendant to enter a decree of dismissal, with costs, against the petitioner, including a counsel fee; and I observed that the power to appoint a solicitor on behalf of a defendant conferred on the court by section 18 of the Divorce act (*P. L. 1907 p. 480*), carried with it, I thought, an implication of power to compel compensation of that solicitor by the husband, but whether so or not, section 91 of the Chancery act, amended April 11th, 1910 (*P. L. 1910 p. 427*), undoubtedly gives that power. From the decree of dismissal, entered in pursuance of this memorandum, which provided for the payment of costs and counsel fee just mentioned, an appeal was taken to the court of errors and appeals from the whole and every part thereof. This decree was affirmed in a *per curiam. Johns* v. *Johns, 80 N. J. Eq. 257.* The affirmance was for the reasons stated in the opinion (memorandum) filed by me in this court, but that was inadvertently never reported. The *remittitur,* which was filed in this court September 16th, 1912, orders and adjudges that the decree appealed from be in all things affirmed.

Therefore, the view expressed by me that a fee may be awarded to counsel assigned to actively defend on behalf of the defendant in an *ex parte* divorce, to be paid by the petitioner, has the sanction of the court of errors and appeals and is established law.

Suit money, as such, and dissociated from alimony, is allowed in proper cases. In *Oram* v. *Oram, 77 N. J. Eq. 1,* it was held that in the circumstances of that case the wife was entitled to an allowance *pendente lite* for the expenses of her suit to establish marriage. In *Main* v. *Main, 50 N. J. Eq. 712,* it was held that where defendant was required by the court, on the election of the petitioner, to come from a distant state and be present at the trial for the purpose of identification, the reasonable hotel expenses of defendant and an important witness accompanying her, and defendant's dining and sleeping car expenses, are properly chargeable to petitioner, in addition to her car fare, although she had means of her own. In this case Vice-Chancellor Green, although allowing car fare and hotel bills as suit money to a wife and her witness coming from a distance, declined to allow for the expenses of executing a commission to take depositions *de bene esse* on the part of the wife, saying, that on this question the statute was express, citing *Rev. p. 386 §* *44.* This statutory provision was that the party requiring depositions on a commission shall be at the expense thereof and shall not have any allowance for the same in the taxation of costs. This has been changed and the act now provides that the party requiring depositions on commission shall in the first instance be at the sole expense thereof, but such expense may be made a part of the taxed costs of the prevailing party if so ordered by the court. *Comp. Stat. p. 2236 § 53.* Now, in the case at bar, it will be necessary for the wife to take depositions on commission in Belgium. Strict adherence to precedent would seem to require me to deny an allowance for the expense of taking such depositions.

The matter of costs between husband and wife in a divorce suit is *sui generis,* and I think the learned vice-chancellor erred in the *Main Case* in saying that the wife could not have the expenses of taking depositions on a commission in a divorce suit with her husband. He might, it seems to me, with equal pro-

priety have declined to allow car fare and hotel bills as suit money, upon the ground that the fee bill made no provision for such awards; and to say that because the Evidence act made provision that depositions should be taken at the expense of the party requiring them, the wife should have no allowance therefor, might be to deny her the means of making a defence against her husband's suit. The learned vice-chancellor cites no authority for his decision in this regard, and the authorities appear to be the other way. I think she is entitled to an allowance to enable her to take depositions on commission.

In *19 C. J. 226 § 537*, it is said:

"In addition to the sum allowed the wife for her maintenance and support during the pendency of the suit, it is usual to allow her a sum to defray the expenses of the suit."

In *2 Bish. M., D. & S. § 992*, it is laid down:

"It would be a disgrace to the law and a grievous offence against justice, if, after a woman had given her person and property in marriage to a man with whom afterward a litigation arose as to the conduct of either in the new relation, or as to the validity of the marriage itself, she must sustain her prosecution or defence without the money essential thereto, and with no possible access to the fund which she had contributed to accumulate. Hence, the doctrine and practice of suit money."

Although the control of the property of married women in this state is no longer given by law to their husbands upon marriage, and while most married women do not contribute to the funds accumulated by their husbands, nevertheless, the doctrine laid down by Mr. Bishop is equally applicable to our women who have no funds, quite irrespective of whether or not they ever had any which went to their husbands; although, if the wife has sufficient separate property, the reason for giving her either temporary alimony or money to defray her expenses in the suit does not exist, and she is not entitled to either. *Westerfield* v. *Westerfield, 36 N. J. Eq. 195.* See, also, *Suydam* v. *Suydam, 79 N. J. Eq. 144, 146, 147.*

All too frequently husbands leave their wives in European countries and come to America, and, after the lapse of the statutory period, sue them for divorce, alleging desertion in their old

countries. Several of these cases have fallen under my notice, and I have always, upon request of the wives, assigned counsel to defend them, and have found in several of the cases that when a defence was interposed, the suits have been abandoned. I think I may safely assert that it is the policy of our law in all of these cases to see to it that the wives are defended at the husband's expense, and that their suits are stayed until they provide means ample for the purpose, at least in all cases in which the wives desire to interpose defence.

Alimony stands upon a somewhat different footing, and when wives have stayed in Europe for years after their husbands have emigrated here, and have existed there by their own exertions, or otherwise, alimony *pendente lite* ought to be withheld from them on the ground of laches, if for no other reason. *Westerfield* v. *Westerfield, supra* (at *p. 198*).

An order will be entered awarding suit money and counsel fee against the husband. No alimony will be allowed at this time. Amounts to be settled on signing order.